IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| ESTATE OF VINCENT McLAUGHLIN, et. al.,<br><br>             Plaintiff(s),<br>     v.<br><br>TERRI OWEN, et. al.,<br><br>             Defendant(s). | NO. 5:11-cv-02287 EJD (PSG)<br><br>**ORDER DENYING PLAINTIFFS' MOTION TO REMAND**<br><br>[Docket Item No. 11] |

Presently before the Court is the motion of Plaintiffs Estate of Vincent McLaughlin and Raquel McLaughlin-Ray (collectively, "Plaintiffs") to remand this action back to the Superior Court from which it originated. Defendants San Jose Mercury News, LLC (the "Mercury News") and Aetna Life Insurance Company ("Aetna") each filed written opposition to the motion. Pursuant to Civil Local Rule 7-1(b), the court found this matter appropriate for decision on the pleadings and vacated the associated hearing. For the reasons explained below, Plaintiff's motion will be denied.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Vincent McLaughlin ("McLaughlin") was employed by the Mercury News beginning in 1981. See Complaint ("Cmplt."), Docket Item No. 1, Ex. A at ¶ 9. During his employment, the Mercury News provided McLaughlin with an Aetna life insurance policy. Id. at ¶ 10. McLaughlin's designated beneficiary would receive $250,000 upon his death under the terms of the policy. Id.

McLaughlin purportedly submitted a form to the Mercury News on or about August 11, 2006, changing the beneficiary of his life insurance policy to Terri Owen ("Owen"), whom was designated as a "friend." Id. at ¶ 11; Ex. 2. The designation form was not signed by McLaughlin.

Id. at ¶ 13. The Complaint also alleges that the handwriting on the form is not that of McLaughlin. Id. at ¶ 14.

Interestingly, Owen was also employed by the Mercury News at the time McLaughlin submitted the change of beneficiary. Id. at ¶ 7. Also, despite the fact McLaughlin had two minor children at the time, neither were listed on the form. Id. at ¶ 12.

McLaughlin died on July 24, 2009. Id. at ¶ 9. The Mercury News initially informed McLaughlin's family that his children would receive the life insurance proceeds, however, they subsequently retracted that statement, having discovered that Owen was the designated beneficiary. Id. at ¶¶ 17, 18. The Mercury News then informed Aetna that Owen was the policy beneficiary, and Aetna paid the proceeds to Owen accordingly. Id. at ¶ 19.

Based on these allegations, Plaintiffs contend that Owen - and not McLaughlin - completed and submitted the change of beneficiary form to the Mercury News in order to recover McLaughlin's life insurance proceeds. Id. at ¶ 22. As such, they filed a Complaint against the Mercury News, Aetna, and Owen in Santa Clara County Superior Court on April 11, 2011. The Mercury News then removed the action to this court on May 10, 2011. Through this motion, Plaintiffs now seek to remand the case back to the Superior Court.

## II. LEGAL STANDARD

Removal jurisdiction is a creation of statute. See Libhart v. Santa Monica Dairy Co., 592 F.2d 1062, 1064 (9th Cir. 1979) ("The removal jurisdiction of the federal courts is derived entirely from the statutory authorization of Congress."). Only those state court actions that could have been originally filed in federal court may be removed. 28 U.S.C. § 1441(a) ("Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant."); see also, e.g., Caterpillar Inc. v. Williams, 482 U.S. 386, 392 (1987) ("Only state-court actions that originally could have been filed in federal court may be removed to federal court by defendant."). Accordingly, the removal statute provides two basic ways in which a state court action may be removed to federal court: (1) the case presents a federal question, or (2) the case is between citizens of different states. 28 U.S.C. §§ 1441(a), (b). It falls upon the defendant to show the basis for

federal jurisdiction. Nishimoto v. Federman-Bachrach & Assoc., 903 F.2d 709, 712 (9th Cir. 1990). Removal jurisdiction statutes are strictly construed against removal. Shamrock Oil & Gas Corp. v. Sheets, 313 U.S. 100, 108 (1941).

When removal is based on the presence of a federal question, as it is here, the court looks to the face of a "well-pleaded complaint" to determine whether a cause of action is created by federal law or whether the plaintiff's right to relief necessarily depends on the resolution of a substantial question of federal law. Christianson v. Colt Indus. Operating Corp., 486 U.S. 800, 808 (citing Franchise Tax Bd. of California v. Constr. Laborers Vacation Trust, 463 U.S. 1, 27-28 (1983)). "[I]t must be clear from the face of the plaintiff's well-pleaded complaint that there is a federal question." Duncan v. Stuetzle, 76 F.3d 1480, 1485 (9th Cir. 1996). The complaint as it existed at time of removal dictates whether removal jurisdiction is proper. Libhart, 592 F.2d at 1065.

The "well-pleaded complaint rule" is not without exceptions, however. One notable exception is the "artful pleading" doctrine, which allows the court to look beyond the complaint when the plaintiff has disguised or artfully plead the federal claim as a state cause of action in order to prevent federal jurisdiction. See ARCO Envtl. Remediation, L.L.C. v. Dep't of Health & Envtl. Quality of the State of Montana, 213 F.3d 1108, 1114 (9th Cir. 2000). No matter the label given by the plaintiff, a federal court will recharacterize the state claim as a federal one and uphold the removal. Federated Dept. Stores, Inc. v. Moitie, 452 U.S. 394, 398 n. 2 (1981). The "artful pleading" doctrine applies to state claims that are completely preempted by federal law. See Caterpillar, 482 U.S. at 393 ("Once an area of state law has been completely pre-empted, any claim purportedly based on that pre-empted state law is considered, from its inception, a federal claim, and therefore arises under federal law.").

### III.   DISCUSSION

Although the Complaint contains only claims based in state law, the Mercury News removed this case on the basis of a federal question in the Complaint. Specifically, the Notice of Removal states that "[b]ecause plaintiff's claims and their prayer for relief turns on the administration of [the Aetna] plan and the payment of benefits under this plan, this matter is preempted by ERISA." See Not. of Removal, at ¶ 4. Thus, Defendants essentially argue that Plaintiff's claims, while artfully

plead, are nonetheless completely preempted by ERISA. Since neither party disputes that ERISA governs McLaughlin's life insurance policy,[1] the question presented is whether Defendants are correct that complete preemption can be found.[2] In order to make this determination, however, an explanation of ERISA preemptions is necessary.

### A.     ERISA Preemption

ERISA was enacted to "protect...the interests of participants in employee benefit plans and their beneficiaries" by provided standardized regulatory requirements for the administration of employee benefit plans. 29 U.S.C. § 1001(b); Aetna Health Inc. v. Davila, 542 U.S. 200, 208 (2004). In addition, ERISA clarifies the "remedies, sanctions, and ready access to the Federal courts." 29 U.S.C. § 1001(b). Because of its scope, "any state-law cause of action that duplicates, supplements, or supplants the ERISA civil enforcement remedy conflicts with the clear congressional intent to make the ERISA remedy exclusive and is therefore pre-empted." Davila, 542 U.S. at 208.

In general, the "well-pleaded complaint" doctrine, as explained above, prevents the removal of state law claims on the sole basis that federal law preempts them. This is true because federal preemption would only arise as a defense. See Garibaldi v. Lucky Food Stores, Inc., 726 F.2d 1367, 1370 (9th Cir. 1984) ("[W]here the state claim has been preempted by federal law, it does not follow that the federal court has jurisdiction. This circuit has repeatedly held that preemption, as a defensive allegation, is not grounds for removal."). It follows then that an ERISA preemption defense under § 514(a) of 29 U.S.C. § 1144(a) does not confer itself federal jurisdiction. See Marin Gen. Hosp. v. Modesto & Empire Traction Co., 581 F.3d 941, 945 (9th Cir. 2009). "A provision of state law may 'relate to' an ERISA benefit plan, and may therefore be preempted under §

---

[1] In the motion, Plaintiffs suggest that ERISA applies only to employer-sponsored health insurance plans. That suggestion is misplaced. See 29 U.S.C. 1002(a) ("The terms 'employee welfare benefit plan' and 'welfare plan' mean any plan, fund, or program which was heretofore or is hereafter established or maintained by an employer...providing for its participants or their beneficiaries...medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability, *death* or unemployment, or vacation benefits, apprenticeship or other training programs, or day care centers, scholarship funds, or prepaid legal services....") (emphasis added).

[2] In addition, there is no dispute that Plaintiffs, who represent the participating employee and potential beneficiaries, have standing to sue under ERISA. See 29 U.S.C. § 1132(a).

4
Case No. 5:11-cv-02287 EJD (PSG)
ORDER DENYING PLAINTIFFS' MOTION TO REMAND (EJDLC1)

514(a)....But a defense of conflict preemption under § 514(a) does not confer federal question jurisdiction on a federal district court." Id.  This type of preemption - the type that does not support federal jurisdiction under the "well pleaded complaint" doctrine - is conflict preemption.  See id.

But ERISA is also capable of complete preemption, which arises under § 502(a) of 29 U.S.C. § 1132(a)[3] and serves as an exception to "well pleaded complaint" doctrine.  Davila, 542 U.S. at 208.  "'[W]hen a federal statute wholly displaces the state-law cause of action through complete pre-emption,' the state claim can be removed." Id. at 207 (quoting Beneficial Nat. Bank v. Anderson, 539 U.S. 1, 8 (2003)).  "Complete preemption...is 'really a jurisdictional rather than a preemption doctrine, [as it] confers exclusive federal jurisdiction in certain instances where Congress intended the scope of a federal law to be so broad as to entirely replace any state-law claim.'" Marin Gen. Hosp., 581 F.3d at 945 (quoting Franciscan Skemp Healthcare, Inc. v. Cent. States Joint Bd. Health & Welfare Trust Fund, 538 F.3d 594, 596 (7th Cir. 2008)).  The ERISA civil enforcement mechanism contained in § 502(a) is so extraordinary that it "converts an ordinary state common law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule." Metropolitan Life Ins. Co. v. Taylor, 481 U.S. 58, 65-66 (1987).

In order to determine whether a state-law cause of action is completely preempted, the court must apply the two-prong test set forth by the Supreme Court in Aetna Health, Inc. v. Davila.  See Marin Gen. Hosp., 581 F.3d at 946.  The first prong of the coincidentally-named Davila test is satisfied if the plaintiff "at some point in time, could have brought his claim under ERISA § 502(a)(1)B)," a section allowing for recovery of benefits due, enforcement of rights, or clarification of rights to future benefits under the terms of the employee benefits plan at issue.  Davila, 542 U.S. at 210.  The second prong is satisfied if "there is no other independent legal duty that is implicated by a Defendant's actions." Id.

**B.    Application**

Within the ERISA preemption framework stated above, the court has determined that three

---

[3] "A civil action may be brought...by a participant or beneficiary...to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." § 502(a); 29 U.S.C. § 1132(a).

5

Case No. 5:11-cv-02287 EJD (PSG)
ORDER DENYING PLAINTIFFS' MOTION TO REMAND (EJDLC1)

of the claims are completely preempted by ERISA.

### 1. Negligence and Failure to Investigate against Aetna

The first and second preempted claims are those designated as claims five and six, which assert negligence and failure to investigate against Aetna. For these claims, the first prong of the Davila test is satisfied because, as plead, Plaintiffs are directly seeking the recovery of benefits purportedly due to them under the life insurance plan. See Davila, 542 U.S. at 210. For the negligence claim, Plaintiff alleges that "Aetna negligently paid the proceeds to Terri Owen although decedent did not sign the change of beneficiary" and requests that "the proceeds from the life insurance policy be paid to the Employee's estate" and to his family. Complt. at ¶¶ 47, 52. For the claim asserting failure to investigate, Plaintiff alleges that Aetna "failed to verify" that McLaughlin had changed his beneficiary designation and "failed to confirm" the designation before payment of benefits, both of which damaged Plaintiffs in same amount of benefits paid to Owen. Id. at ¶¶ 58-61. Although Plaintiffs did not label these as ERISA claims, the allegations quite clearly fall within the purview of § 502(a) of 29 U.S.C. § 1132(a), especially when read in conjunction with the specific relief sought for each claim.

The second prong of the Davila test is also met for each of these claims. In addition to improperly paying the proceeds to Terri Owen, Plaintiffs further allege as part of the negligence claim that Aetna "failed to request a hard copy of the change of beneficiary and instead paid the proceeds according to verbal communications" from the Mercury News. Id. at ¶¶ 47, 48. A similar allegation is made against Aetna with regard to the claim for failure to investigate. Id. at ¶ 60. Aetna's duties relating to the administration of benefits, which Plaintiff seeks to invoke here for claims five and six, are imposed by and enforced through ERISA. See Peralta v. Hispanic Business, Inc., 419 F.3d 1064, 1070-71 (9th Cir. 2005) ("ERISA guards against these evils and protects employee benefit plans by setting forth certain fiduciary duties applicable to the management of both employee welfare and benefit plans."); 29 U.S.C. § 1104 ("[A] fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and...for the exclusive purpose of...providing benefits to participants and their beneficiaries."). For that reason, this claim is really nothing more than a claim "to rectify a wrongful denial of benefits promised"

under an ERISA-regulated plan and does not "attempt to remedy any violation of a legal duty independent of ERISA." See Davila, 542 U.S. at 214. This is true despite the negligence labels Plaintiff has artfully used to disguise what are in actuality ERISA-based claims.

### 2. Breach of Contract against Aetna

Claim ten, which asserts breach of contract against Aetna, is the third claim completely preempted by ERISA. Under this claim, Plaintiff alleges the existence of a contract between Aetna and McLaughlin "for insuring Mr. McLaughlin [sic] life and in case of his death that [Aetna] would his beneficiary the proceeds." Cmplt. at ¶¶ 75, 76. Plaintiff goes on to claim that Aetna refused to pay the insurance proceeds to Plaintiffs. Id. at ¶ 78. Considering the substance of these allegations, the instant breach of contract claim satisfies the first prong of the Davila test for much the same reason as those discussed above. In fact, these allegations fall under § 502(a) in an even more direct way. Here, Plaintiffs seek to recover as damages the benefits they believe are due under the written terms of the plan managed by Aetna. Indeed, Plaintiffs contend Aetna allegedly breached the *ERISA contract* itself as it applies to beneficiaries. Contrary to what Plaintiffs argue in the motion, that characteristic places this claim squarely under the preemptive provisions ERISA. See General American Life Ins. Co. v. Castonguay, 984 F.2d 1518, 1521 (9th Cir. 1993) ("The key to distinguishing between what ERISA preempts and what it does not lies...in recognizing that the statute comprehensively regulates certain *relationships*: for instance, the relationship between plan and plan member, between plan and employer, between employer and employee...and between plan and trustee."); see also Burbank Podiatry Assocs. Group, APC v. Blue Cross, No. C 98-2326 SI, No. C 98-3446 SI, No. C 98-3447 SI, 1999 U.S. Dist. LEXIS 1397, at *22 (N.D. Cal. Feb. 2, 1999) ("Complete preemption, and thus federal jurisdiction, requires that the plaintiff bringing the claim must participate in one of these relationships by being a plan participant, beneficiary, or fiduciary entitled to seek recovery under 29 U.S.C. § 1132(a)."). It is also that same characteristic which satisfies the second prong of the Davila test, since the legal duty at issue arises directly from terms of the plan. Davila, 542 U.S. at 212-13. Since both prongs of the Davila test are satisfied, complete preemption exists.

Having found that three of Plaintiff's claims are subject to complete preemption under

7
Case No. 5:11-cv-02287 EJD (PSG)
ORDER DENYING PLAINTIFFS' MOTION TO REMAND (EJDLC1)

1  ERISA, the court must find a basis for federal jurisdiction here.  See id. at 214.  Accordingly, the
2  court may assert supplemental jurisdiction over the remaining claims and must deny Plaintiff's
3  motion to remand.  See 28 U.S.C. § 1367(a).

### III.  ORDER

Based on the foregoing, Plaintiff's Motion to Remand is DENIED.

**IT IS SO ORDERED.**

Dated:  September 20, 2011



EDWARD J. DAVILA
United States District Judge